**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **MICHELE U. MADISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 3:26-cv-00052 – NKM-JCH** |
| | ) | |
| **RECTOR & VISITORS OF THE UNIVERSITY OF VIRGINIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 11, Defendant Rector & Visitors of the University of Virginia ("UVA" or "Defendant"), by and through its undersigned counsel, hereby submits this Reply Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint ("Defendant's Reply"). For the reasons below, as well as those in Defendant's Motion to Dismiss and Memorandum of Law in Support (collectively "Defendant's Motion"), Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

## I. INTRODUCTION

Nothing in Plaintiff's Opposition changes that Dismissal of her Amended Complaint is appropriate for the reasons stated in Defendant's Motion. Plaintiff's disparate treatment claim fails as she has not alleged adverse action, a similarly situated comparator (or other facts alleging treatment based on sex), or that Plaintiff was meeting UVA's legitimate expectations at the time she was suspended with pay and benefits through the expiration of her Employment Agreement. Plaintiff's harassment claim fails because she has not alleged the handful of performance-related comments and the paid suspension were based on her sex, unwelcome, severe, or pervasive in

nature. Plaintiff's segregation claim fails because she has not alleged UVA's Women's Teams were limited to female coaches, that a dual-hatted position was available for field hockey, or that she was qualified to coach any sport other than field hockey. Plaintiff's compensation-related discrimination claims fail as she has not identified appropriate comparators. Plaintiff's retaliation claim fails because, as she admits, UVA's "one course of conduct" began roughly seven months before she engaged in any protected activity. Finally, Plaintiff's disability discrimination claim fails because the alleged stray remarks that she needed help, "rehab," and an intervention are insufficient to show the decisionmakers perceived her as having a disability.

## II. ARGUMENT

### A. This Court Should Consider Exhibit A in Connection with the Motion to Dismiss.

Rather than respond to UVA's arguments raised in response to the allegations pleaded and incorporated into her Amended Complaint, Plaintiff contends that this Court should not consider the video recording of her speech, [1] which reflects the events at the heart of this case.[2] Plaintiff, however, incorporated the video into the Amended Complaint through her allegations about the 50th Anniversary Celebration of the Field Hockey Program on the evening of October 21, 2023, disparate treatment, and disability discrimination, and thus, this Court may properly consider it in connection with Defendant's Motion.

None of Madison's arguments should prevent this Court from viewing the video. The video is incorporated by reference in and integral to the Amended Complaint, and there is no dispute as

[1] For the reasons set forth below and in Defendant's Motion, this Court may and should consider Exhibit A. See Def.'s Mot. at 2, n. 1 and Section II.A, supra.
[2] Plaintiff agrees UVA's other Exhibits may be considered. See Pl.'s Opp. at 5, n. 2 (referring to Exhibit C (Plaintiff's original EEOC Charge)) and 8 (stating "Plaintiff does not dispute the authenticity of [Exhibit B or D], and the Court may consider them.").

to the video's authenticity. Additionally, as Madison admits, a video may be considered on a motion to dismiss "to the extent that [it] 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations". See Pl.'s Opp. at 9-10 (emphasis added) citing Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670 (4th Cir. 2024).

The video is incorporated by reference in Plaintiff's Amended Complaint because it is referenced multiple times in the Amended Complaint. See, e.g., Am. Compl. at ¶¶64, 66; see Thweatt v. Rhodes, No. 3:20-CV-548-HEH, 2021 WL 399725, at *3 (E.D. Va. Feb. 4, 2021) (finding video incorporated by reference where it was referenced three times in the complaint), aff'd, No. 21-1242, 2023 WL 4231724 (4th Cir. June 28, 2023). In her Opposition, Madison does not dispute the video is integral to this case, and she admits as much in her Amended Complaint. See Pl.'s Opp. at 9-11; Am. Compl. at ¶1 (referencing October 2023 as "the events at the heart of this case").

Moreover, Plaintiff's own allegations show the video is integral. In her Title VII disparate treatment claim, Plaintiff incorporates the speech, and alleges it reflects different treatment and pretext when compared to male coaches' conduct. See Am. Compl. at ¶¶2 (referencing speech), 3 ("use of profanity . . . became disqualifying" in contrast to "male basketball head coach's on-court profanity and screaming"), 104 ("treated her one imperfect evening as disqualifying while excusing the same or worse conduct by male coaches"), 105 (alleging UVA's "reliance on a single evening" as pretextual "in contrast to the 'lifetime achievement' framework it applies to male head coaches"). In her ADA and Rehab Act claims, Plaintiff alleges that, based on their watching of the video, Williams and Pritzker perceived her as a person with alcohol use disorder. See id. at ¶¶3, 64 (after watching the video together, Williams allegedly stated she found "all of it" objectionable), 66 (alleging Pritzker "told [Madison] he had concluded from watching the video that she was

'inebriated.'"). Contrary to Plaintiff's assertion, the Doriety standard for a court's consideration of a video does not require the court to first find the video resolves a dispositive issue in the case. Compare Pl.'s Opp. at 9-10 and Doriety, 109 F.4th at 679; L.M. by Roe #1 v. Graham, 168 F.4th 196, 199 (4th Cir. 2026). However, even if it did, the video shows that Madison was not meeting UVA's legitimate expectations at the time UVA suspended her with pay and decided not to renew her Employment Agreement, which Plaintiff is required to allege for her Title VII, ADA, and Rehab Act claims.[3] See Pl.'s Opp. at 9; Def.'s Mot. at 9, 13, 39.

Next, there is no actual dispute as to the video's authenticity. Madison does not assert the video is inauthentic. Madison does not contest that she was involved in the conduct throughout the speech. Madison does not claim the content of her speech was altered in any way. Madison stands by her conduct in the speech. That is what is relevant for this Court to review. While she argues it is not "a fair and complete record of the event," she does not dispute its "authenticity," meaning the video is not real or not true. See Cambridge Dictionary Online available at https://dictionary.cambridge.org/us/dictionary/english/inauthentic. Madison has not alleged any statement or conduct shown in the video is not real or otherwise not her own. Exhibit A is UVA's "complete" recording and, except for a portion towards the end of the speech, it reflects nearly the entirety of the speech. [4] Moreover, approximately twenty seconds after the video begins, Madison states, "I don't even know where to start" and the video ends with Madison bowing and beginning

[3] While UVA agrees with Plaintiff that the video also establishes that UVA had legitimate, nondiscriminatory reasons for its actions, UVA did not make that argument in its Motion to Dismiss.

[4] Due to memory-card related limitations, the person recording Madison's speech stopped towards the end of her speech, while she was listing alumnae names, and resumed when Madison was discussing her hiring at UVA. See Ex. A at 6:18. However, the total video is 8 minutes and five seconds long. See id. As Plaintiff alleges her speech only "lasted several minutes," Am. Compl. at ¶59, the video captures the vast majority of the speech and any time not captured is minimal.

to walk off stage. See Def.'s Mot. at Exhibit A. The video includes laughter at times and shows some individuals standing at the end of her speech. Compare Am. Compl. at ¶76 (suggesting video was selectively edited in that laughter and a standing ovation were "cut out"). The fact that the video may not include every detail Madison might wish, does not make it inauthentic by any definition.

Finally, as Plaintiff concedes, the video clearly depicts a set of facts contrary to, and/or blatantly contradicts, Plaintiff's allegations in the Amended Complaint. In her Opposition, Plaintiff admits she used profanity four times, whereas her Amended Complaint only "describes two uses of profanity . . . [which is] incorrect."[5] Pl.'s Opp. at 9, n. 5. Plaintiff alleges "[h]er remarks were not belittling or derogatory; they honored the program's alumnae." Am. Compl. at ¶64. She further alleges that UVA's description of her speech as disheveled, inappropriate and offensive did not reflect "objective reality." See Am. Compl. Exhibit 1 at 11.[6] However, the video shows she cursed multiple times, made statements, and engaged in conduct objectively inappropriate for a 50th Anniversary celebration of the Field Hockey Program, including among other things, "I don't know why the team won yesterday," "they [UVA] need you to make things happen," "we're one of the worst in terms of [fundraising] . . . but if we all give $5 then we're all good right, right," and "I wish I could say something to make all of you feel welcomed and wonderful but I don't know how," and grabbing her breasts while discussing fundraising. See Def.'s Mot. at 4-5 and Ex. A.

In Doriety, a case cited by both Parties, the Fourth Circuit held a video should not have been considered where it "did not clearly depict" what occurred during an alleged excessive force

[5] Plaintiff may not use briefing to amend her Amended Complaint. See, e.g., McDonald v. LG Elecs. USA, Inc., 219 F. Supp. 3d 533, 541 (D. Md. 2016).
[6] Since Plaintiff attached this exhibit to her Amended Complaint, there is a presumption that the plaintiff "has adopted as true the contents of that document." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016).

incident. 109 F. 4th 670, 680-81 (4th. Cir. 2024). The same is not true here. The video clearly depicts Madison, her statements, and her conduct on October 21, 2023. The video itself shows that Plaintiff's allegations in the Amended Complaint are contrary to what actually happened.

As for Plaintiff's argument that consideration of the video would convert UVA's Motion to Dismiss into one for summary judgment, this also fails. See Pl.'s Opp. at 10. As cited in UVA's Motion, the Fourth Circuit has issued multiple decisions holding that a video may be considered at the motion to dismiss stage if the criteria above are met. See Def.'s Mot. at 2. In at least two of those same cases, courts declined to find such consideration converted a motion to dismiss into a motion for summary judgment. See Doriety, 109 F.4th at 679; Graham, No. 1:23-cv-01574, 2024 WL 1742233 at *4 (E.D. Va. Apr. 23, 2024) (district court specifically rejecting that argument), aff'd, 168 F. 4th 196, 199 (2026).

### B. The Nonrenewal is Not an Adverse Action for Plaintiff's Disparate Treatment Claim.[7]

Plaintiff has not identified any Fourth Circuit precedent holding a nonrenewal is an adverse action under statutes she is claiming in her Amended Complaint. See Pl.'s Opp. at 13-14. She relies only on an Age Discrimination in Employment Act case, Palmer v. Liberty Univ., Inc., 72 F.4th 52, 63-67 (4th Cir. 2023). However, in that case the Fourth Circuit did not hold that a nonrenewal is an adverse action, either generally or under the facts of that case. See id. Instead, the Court found Plaintiff failed to establish a *prima facie* case because, among other things, the employee failed to meet the employer's expectations at the time of her nonrenewal. See id. at 67. There is no right to a renewal of an Employment Agreement under any law. UVA stands on the arguments made in the Memorandum of Law in Support of the Motion to Dismiss and will not repeat them again here.

[7] While UVA recognized that Plaintiff's nonrenewal may be a materially adverse action for retaliation purposes, see Def.'s Mot. at 32-33 n.17, this does not change that it is not an adverse action, which is the higher standard post-Muldrow.

### C. The Paid Suspension is Not an Adverse Action for Plaintiff's Disparate Treatment Claim.

As for Plaintiff's suspension with pay and benefits, Plaintiff largely relies on Ahmed v. Hamtramck Pub. Schs., 178 F. 4th 975 (6th Cir. 2026), an out-of-Circuit case that is not binding on this Court. The facts of that case are distinguishable as it involved a public school district's "public announcement of a pending investigation into her supposed misconduct." Id. at 985. Plaintiff has not alleged any similar harm here. If anyone made public Madison's inappropriate conduct or the actions UVA took based on that conduct, it was her. See Def.'s Mot. at 22. As UVA argued in its Motion, this Court has held that placement on administrative leave is not an adverse employment action. See Terrell v. UVA Health System, No. 3:26-CV-00036, 2026 WL 1122379, at *3 (W.D. Va. Apr. 24, 2026). While the paid leave status was longer here, its reasoning still applies just the same.

Even if Plaintiff was correct that UVA "never investigated" during her paid suspension,[8] this would not establish an adverse action. Plaintiff has not alleged that UVA's alleged failure to investigate negatively affected the terms and conditions of her employment. She remained on paid suspension before and after the alleged failure to investigate. Plaintiff has identified no authority suggesting that it is an independent harm under Muldrow. See Def.'s Mot. at 11-12.

### D. Plaintiff's Comparators and Stereotyping Allegations Fail to Support Plaintiff's Disparate Treatment Claim.

Plaintiff argues that comparators need not have engaged in "identical conduct." Pl.'s Opp. at 18. Even accepting this as true (which it is not), it does not change the fact that Plaintiff has not identified any comparator with even similar conduct to her own. As here, Seabrook v. Driscoll,

[8] UVA treats this as correct for purposes of this Motion only; however, UVA did investigate Plaintiff's inappropriate conduct after October 21, 2023.

involved a disparate treatment claim regarding alleged inappropriate conduct. 148 F.4th 264, 270-71 (4th. Cir. 2025). The Driscoll Court held that the plaintiff's conduct must be "comparable in seriousness to [that] of employees outside [her] protected class" and "the plausibility of her claim depends on whether that comparator is similarly situated." Id.

Nothing in Plaintiff's Amended Complaint or Opposition establishes that. See Pl.'s Opp. at 18. Plaintiff identifies only one comparator regarding her disparate treatment claim: Tony Bennett, Head Coach of the Men's Basketball team, who allegedly "yelled across the court" at a broadcaster during one game and swore once at a referee during another. See Am. Compl. at ¶92. Conduct during a game on the basketball court on national television is not similar to conduct at a milestone celebratory event of a sports program. Additionally, the alleged conduct of the men's basketball coach and Plaintiff are undeniably distinct. Bennett yelled once and swore once; Plaintiff's inappropriate speech included at least four instances of swearing, derogatory remarks, and other inappropriate conduct. See Def.'s Mot. at 4-5; see also Ex. A. Plaintiff vaguely alleges male coaches had latitude in language, demeanor and self-presentation, and that "UVA's baseball program has at various times hosted donor events characterized internally as 'one big drink fest.'" See Pl.'s Opp. at 6-7, 18 citing Am. Compl. at ¶¶89-90, 97. However, in both cases she fails to identify any alleged inappropriate conduct by a male comparator at all, so again any comparison fails. See id. citing Am. Compl. at ¶97. UVA did not suspend Madison with pay for cursing at practice or cursing during a game. The Amended Complaint fails as a matter of law to establish a requisite comparator.

Plaintiff's reliance on Woods v. City of Greensboro, 855 F.3d 639, 652 (4th Cir. 2017), fails to save her claim. Woods was decided eight years before Seabrook and involved a City's decision to refuse a loan where it would have taken a third-position lien. Id. at 643-44. As an initial

matter, the Court recognized the plaintiff was "required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute" to survive a motion to dismiss. Id. at 648. The Court found that allegations of a disparity study demonstrating a pattern of the City almost exclusively lending to nonminority-owned businesses, facts that the plaintiffs' residence had sufficient equity to fully secure a third-position lien, and examples of the City taking a third-position lien in approving a loan to a nonminority corporation, together nudged the claims from conceivable to plausible. Id. at 648.

Even without her comparator allegations, Plaintiff has not pleaded sufficient facts to do the same here. Her non-comparator evidence relies on stereotypes. See Pl.'s Opp. at 19. Plaintiff fails to adequately allege that Williams or Pritzker applied sex stereotypes in addressing her inappropriate conduct on October 21, 2023 (and they did not do so). See Section 2.G, infra. To the extent Plaintiff's other evidence related to the composition of Head Coaches, this has no bearing on UVA's response to inappropriate conduct and should not be considered.

### E. Plaintiff's Disparate Treatment Claims Fail As She Has Not Alleged She Was Meeting UVA's Legitimate Expectations at the Relevant Time.

Plaintiff asserts legitimate expectations are not decided on a motion to dismiss. See Pl.'s Opp. at 20. But this Court has granted motions to dismiss on this very issue. See Def.'s Mot. at 14 citing Appleton, 2025 WL 2677901 at *5 (finding employee's general assertion of outstanding performance was insufficient to show satisfactory performance at the time of his resignation). There, this Court held that the plaintiff failed to allege that he was meeting performance expectations at the time of the adverse action, and granted the motion to dismiss under Rule 12(b)(6). As the same is true here, Plaintiff's disparate treatment claim should be dismissed.

Nothing in Plaintiff's Opposition changes the fact that UVA found her conduct unacceptable at the time of the alleged adverse actions, which began on October 23, 2023. Plaintiff

argues that her allegations of a written extension recommendation in March 2023, merit increase in July 2023, and a win by her team against UNC on October 20, 2023 sufficiently pled she was meeting UVA's legitimate performance expectations. See Pl.'s Opp. at 20 citing Am. Compl. at 1, 50-51. As an initial matter, UVA does not concede that Madison received a written extension recommendation in March 2023 or merit increase in July 2023, see Pl.'s Opp. at 20 and Am. Compl. at 1, 50-51, but assumes as much as well for purposes of this Motion to Dismiss. Moreover, Plaintiff's inappropriate conduct, as alleged in the Amended Complaint, started in August 2023 when she showed up on grounds with alcohol on her breath and was counseled for it, and she engaged in inappropriate conduct during the speech on October 21, 2023. Both inappropriate conduct issues happened after her alleged extension recommendation in March 2023 and merit increase in July 2023. Additionally, the team's win against UNC on October 20, 2023 does not show that she was meeting expectations on the date of her suspension. This is underscored by the fact that UVA began to address Madison's inappropriate conduct the next business day after her speech, and as Plaintiff notes, suspended her with pay less than thirty-six hours after the incident occurred. See Pl.'s Opp. at 1.

In support of her argument, Plaintiff cites Sempowich v. Tactile Sys. Tech., Inc., 19 F. 4th 643 (4th Cir. 2021). However, Sempowich is distinguishable on its facts. There, in the days and weeks prior to plaintiff's reassignment, the employer gave her an award, told her it would give her a raise, and gave her a discretionary equity grant. Id. at 650-51. Here, the alleged contract renewal recommendation and salary increase occurred months prior to the August 2023 incident and October 21, 2023 inappropriate speech. Am. Compl. at 1, 50. Plaintiff's attempt to conflate the UVA Field Hockey team's win with her own performance does not change anything. Plaintiff fails to allege she was meeting UVA's legitimate expectations of her performance on and after October

21, 2023. See Pl.'s Opp. at 20. Madison fails to show that UVA did anything unlawful when it suspended her with pay and benefits.

**F. Plaintiff's Harassment Claims Fail As She Has Not Alleged the Conduct Was Unwelcome.**

Plaintiff argues that she was subjected to unwelcome conduct because she objected to it and it was inherently unwelcome. She claims that by "[ask]ing what was objectionable," after watching the video of her speech with her supervisors, she objected to their comments and questions. See Pl.'s Opp. at 22; Am. Compl. at 64. That is not an objection under any definition. Plaintiff also suggests "being told repeatedly by one's superior that one's friends are lying and that one needs rehabilitation is not conduct any employee welcomes." Pl.'s Opp. at 22. However, Plaintiff ignores that the alleged comments were made by her supervisors when she was being questioned about her conduct in only two meetings, and most of the comments were only said once. See Am. Compl. at 65. Moreover, she does not cite any case law that would support that this conduct is unwelcome. Strothers v. City of Laurel, which she and UVA both cited, involved conduct involving physical contact with the employee, which is inapplicable here. 895 F.3d 317, 325 (4th Cir. 2018).

If Plaintiff's definition of "unwelcome" conduct were sufficient, nearly any supervisory meeting with an employee where she is questioned about a performance or conduct issue would morph into unwelcome conduct for harassment purposes. That is not the law. Plaintiff fails to allege unwelcome conduct. See Def.'s Motion at 16; Strothers, 895 F.3d at 329.

**G. Plaintiff's Harassment Claims Fail As She Has Not Alleged Conduct Based on Sex.**

Plaintiff asserts "conduct driven by sex stereotypes is conduct based on sex." However, that is not what Plaintiff has alleged in her harassment claim. Pl.'s Opp. at 22. Instead, she has

alleged a self-defined "drinking lady"-stereotype. See id. She argues "[t]he Amended Complaint . . . calls [it] the 'drinking lady' stereotype: the assumption that a tired, grieving woman at a podium must be drunk, and the demand that she enter rehabilitation on the strength of one evening's events." Id. Plaintiff's labeling the factual allegations in this case as stereotypes does not convert them into stereotypes based on sex. Plaintiff's unsupported conclusions and speculation that sex stereotypes played any role in her paid suspension fails to save her claim.

### H. Plaintiff's Harassment Claims Fail As She Has Not Alleged Severe or Pervasive Conduct.

Plaintiff alleges that the statements Pritzker and Williams made about her conduct while in the workplace "were not criticism of coaching," so they could not have been criticism of work performance. See Pl.'s Opp. at 23. Plaintiff's speech was made as the Head Coach of the UVA Women's Field Hockey Program, during the 50th Anniversary Celebration of the Program, a work-related event. Plaintiff admits that "representing the program publicly and to donors" was, in fact, part of her job. See Pl.'s Opp at 29 citing Am. Compl. at ¶136. Williams' and Pritzker's comments about Madison's conduct at that event obviously relate to her work performance. As Madison alleges, a Head Coach is not simply judged by what happens at practice or during a game. See Am. Compl. at ¶¶136, 39-43 (alleging Plaintiff's coaching duties also included emotional support and counseling, communication with athletes and parents, coordination with academic advisors, mediation, referrals, and fundraising). There are many more parts of this job, including participating in events like the 50th Anniversary Celebration. See id. Most significantly, Plaintiff did not identify any case law supporting her assertion that any of her harassment allegations—Williams' and Pritzker's comments about her workplace conduct, the paid suspension, the "hidden workload" or UVA's EEOC characterizations—are severe or pervasive in nature, whether considered individually or collectively. See Pl.'s Opp. at 23. As such, her harassment claim fails.

## I. Plaintiff Fails to Allege a Segregation Claim.

In her Opposition, Plaintiff confirms she is alleging sex segregation as disparate treatment (and not based on disparate impact). See id. at 24. She argues that the Muldrow standard should be applied to this claim, despite no Supreme Court or Fourth Circuit authority providing as much. See id. at 25-26. Again, Muldrow focused on the language of Section 2000e-2(a)(1). See 601 U.S. 346, 354 (2024) ("the statutory language applicable to this case prohibits "discriminat[ing] against" an individual "with respect to" the "terms [or] conditions" of employment because of that individual's sex."). Section (a)(2) uses the phrases "deprive or tend to deprive" and "adversely affect [her] status as an employee," which are not in subsection (a)(1) and were not considered in Muldrow. Therefore, this Court should not accept Plaintiff's invitation to expand Muldrow to a different section of Title VII that has different language.

For this claim, Plaintiff primarily relies on Armstrong v. Index Journal Co., which is a case whose facts arose roughly fifty years ago and are distinguishable from this case. 647 F.2d 441 (4th Cir. 1981). Armstrong involved a newspaper-employer, which ran a help-wanted ad offering an "opening for lady in advertisement," which plaintiff applied to and was hired as a "special salesman." Id. at 443. The newspaper advertised for its "regular salesmen through male help wanted ads . . . [and] only men have held the position of regular salesman." Id. Plaintiff does not allege UVA did anything of the sort here, and it did not.

Moreover, the female "special salesman" and the male "regular salesmen" "performed the same tasks," worked in the same room, and attended the same meetings. See id. at 443-444 (emphasis added). The female salesman even stepped in to handle the male salesmen's accounts when they were on vacation. See id. Her duties were so similar that the "regular [male] salesmen were not even aware that [the female employee] was classified as a special salesman." Id. at 444.

The Court held the female-salesman-plaintiff established a *prima facie* case where she was "employed in a job expressly limited to the protected class" as the position had only been filled by women and she was "excluded from a higher paid classification [the "regular salesmen" position] whose duties she satisfactorily performed." Id. at 443-44. Armstrong is inapposite here. Madison does not allege that Head Coach Positions of Women's Teams were advertised directly to or otherwise limited to women. In fact, she alleges the Head Coach of the Women's Soccer team was a man, and he made more than her. See Pl.'s Opp. at 7; see also Am. Compl. at 5. Unlike Armstrong, Plaintiff has not alleged that her work was so similar to the male Head Coaches for the Men's Teams that she was essentially interchangeable with any of them, or that she ever filled in (even temporarily) for any of them.

In her Opposition, Plaintiff argues she "was qualified for a men's team or dual-role assignment" and "deterred access to positions she was qualified to hold." See Pl.'s Opp. at 28. However, Plaintiff failed to allege any facts in her Amended Complaint that would support such conclusions. All of the coaching experience she references expressly and exclusively involves field hockey. See id. at 28 citing Am. Compl. at 124. Making speculative statements does not turn them into facts.

To the extent Plaintiff argues she was harmed in her position by alleged uncompensated workload and greater complaint-driven risk is due to the sex of the team members (which UVA again objects to as stereotyping, but assumes as much for purposes of this argument only), see Pl.'s Opp. at 26, then it only follows that the male coaches of such female teams incur that same "deprivation" and Plaintiff has not pled otherwise. This also shows that Plaintiff has not alleged sufficient sex-based deprivation.

Finally, Plaintiff's argument that she was segregated from a "dual-hatted" role also fails. In her Opposition Plaintiff clarifies, "UVA's dual-role positions are, by definition, head-coaching positions in which one coach leads the men's and women's programs in the same sport." Id. at 28 citing Am. Compl. at ¶¶ 21, 96. Plaintiff has not alleged that there is a male field hockey team. See generally Am. Compl. While UVA recognizes the futile-gesture doctrine, Plaintiff's allegation that she was "deterred" is vague and conclusory, and she has not pleaded sufficient facts to support that conclusion. For all of these reasons, Plaintiff's segregation claims fail.

### J. Plaintiff's EPA Claim Fails As She Has Not Identified Appropriate Comparators.

Plaintiff's Amended Complaint alleges the names, sports, tenures, 2023 salaries, and generalized descriptions of head coach responsibilities; however, this is insufficient to establish proper comparators under the EPA. UVA's argument that comparators require "Division I coaching expertise in the relevant sport" is based on Plaintiff's own admission that this was a requirement for any Head Coach job. See Def.'s Mot. at 29 citing Am. Compl. at ¶136. Plaintiff fails to allege facts that she had coaching expertise in the relevant sport of any male Head Coach, including lacrosse, golf, soccer, squash, swimming, diving, track and field/cross country. See Am. Compl. at ¶¶93-96. Plaintiff's admission, combined with her failure to allege the comparators had equal skills, equal responsibilities under similar working conditions, is fatal to her EPA claim.[9] As such, Plaintiff's EPA claim fails.

[9] Plaintiff argues that UVA bears the burden on its market-rate defense; however, UVA did not argue that the market-rate defense is a basis for dismissal.

**K. Plaintiff's Title VII Pay Discrimination Claim Fails as She Has Not Identified Appropriate Comparators.**

Plaintiff's Opposition does nothing to change that she fails to identify job descriptions, specific job duties, direct supervisors, or otherwise allege comparators were similar in terms of experience, education, and other qualifications. See Def.'s Mot. at 31 and Pl.'s Opp. at 31-32. As such, she fails to state a claim of pay discrimination under Title VII.

**L. Plaintiff Retaliation Claim Fails as She Has Not Alleged Causation or that the Paid Suspension Was a Materially Adverse Action.**

In her Opposition, Plaintiff abandons five of the seven alleged independent materially adverse actions she asserted in her Amended Complaint, including those regarding UVA's alleged failure to interview witnesses as well as UVA's submission of its Position Statement and video of Plaintiff's speech to the EEOC. Compare Am. Compl. at ¶132 and Pl.'s Opp. at 32-35 (only addressing the paid suspension and the nonrenewal and stating "[she] does not ask the Court to hold that UVA's Position Statement or its failure to interview witnesses is, standing alone a materially adverse action").

In her Opposition, Plaintiff has not cited any authority establishing that under facts similar to those here, paid leave was a materially adverse action. And in Stukes v. City of Virginia Beach, a decision from the Eastern District of Virginia, the court found paid leave was not a materially adverse action in granting the motion to dismiss. See Def.'s Motion at 33 citing No. 2:18CV145, 2019 WL 13298144, at *7 (E.D. Va. Feb. 25, 2019).

Despite the fact that UVA's alleged retaliatory course of conduct began months before Plaintiff's protected activity, Plaintiff argues she can establish causation with respect to the nonrenewal because UVA's alleged adverse actions were not "proceeding along lines previously contemplated." Pl.'s Opp. at 34 citing Clark Cnty. Sch. v. Breeden, 532 U.S. 268, 272 (2001) (per

curiam). However, as Plaintiff herself states elsewhere in her Opposition, UVA's "one course of conduct" which involved "removal from every function of the job" was established before her protected activity and maintained afterwards. See Pl.'s Opp. at 13, 14, 23 (alleging Williams and Pritzker's "statements ended in her removal from every part of the job."), 24.

Contrary to Plaintiff's argument, see Pl.'s Opp. at 33-34, UVA's contemplated conduct was the same before and after her EEOC Charge.[10] UVA began acting within 36 hours after Plaintiff's inappropriate conduct at the 50th Anniversary Celebration on October 21, 2023. See Pl.'s Opp. at 1; Am. Compl. at ¶62. Plaintiff met with Williams and Pritzker on the morning of October 23, 2023, where she defended her inappropriate conduct. Am. Compl. at ¶¶62, 67. Following the meeting on October 23, 2023, Williams suspended her for forty-eight hours with pay. Id. at ¶¶67-68. After meeting with Plaintiff again on October 25, 2023 to further discuss Plaintiff's conduct at the banquet, Williams extended the paid suspension for the remainder of the 2023 season. Id. at ¶¶69, 71. As Plaintiff states, "on and after February 15, 2024,[11] and continuing each month until July 23, 2025, UVA maintained . . . the suspension and renewed its decision not to reinstate her." Am. Compl. ¶¶132 (emphasis added); see also Pl.'s Opp. at 34 ("[t]he Amended Complaint alleges . . . the suspension continued month by month . . . until the agreement expired."). As maintaining the paid suspension for the remainder of her contract term and non-renewing her contract was an extension of the same course of conduct that began on October 23, 2023, it was, in Plaintiff's words, "one course of conduct." See Pl.'s Opp. at 13. As such, Plaintiff fails to

[10] Plaintiff's reference to the contract extension in March 2023, roughly seven months before "the events at the heart of this case," does not change anything. See Pl.'s Opp. at 33-34.

[11] Significantly, and as Plaintiff admits in her Opposition, this was before she filed her EEOC Charge on May 19, 2024. See Pl.'s Opp. at 5, n. 2.

establish causation regarding either the paid suspension or her nonrenewal, and her retaliation claims still fail.

As the Court held in Breeden, UVA was not required to "suspend [its] previously planned [action] upon discovering" protected activity "and [its] proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality." 532 U.S. at 272 (finding employer was not required to abandon its plan to transfer the plaintiff where it was served with her Title VII suit the day after the employer had communicated a plan for such transfer). The lack of causation is even stronger here where UVA had not just planned, but initiated its course of action months before Plaintiff alleges she engaged in any protected activity.

In addition, UVA notes that in Stukes v. City of Virginia Beach, a decision from the Eastern District of Virginia, the court found paid leave was not a materially adverse action on a motion to dismiss. See Defendant's Motion at 33. Plaintiff has not cited any authority establishing otherwise.

**M. Plaintiff Fails to Allege Disability Discrimination.**

UVA refers this Court to its arguments in Defendant's Motion and they will not be repeated here. To be clear, there is no allegation in the Amended Complaint that Williams or Pritzker said Madison had alcoholism, alcohol-use disorder, or any other statement "attributing a disorder to [Plaintiff]." See generally Am. Compl.; see Pl.'s Opp. at 37. Plaintiff's argument that UVA's discussion of a legal rule about alcohol use in its EEOC Position Statement "presupposes alcohol abuse," is far cry from what that document states. See Def.'s Mot., Ex. D. UVA trusts that the Court will see through this smoke and mirrors effort. Plaintiff also argues that the terms "rehab" and "intervention" inherently suggest an employee has a disorder, but that is also not correct. A person may need or seek "rehab" or an "intervention" for a number of reasons and problems, and without having a disability.

With respect to her ADA claim, Plaintiff's failure to allege she was sufficiently meeting her employer's legitimate expectations at the time of the suspension and nonrenewal is fatal. Additionally, UVA is immune from ADA claims.[12]

As to both her ADA and Rehab claims, they fail because Plaintiff has not alleged that Williams and Pritzker acted on more than her inappropriate conduct at the 50th Anniversary Celebration on October 21, 2023. She has not pleaded sufficient facts to support an inference that Williams and Pritzker were acting based on a perceived alcohol-related disability. Therefore, these claims should be dismissed.

## III. CONCLUSION

For the reasons stated in Defendant's Motion and Reply, Plaintiff fails to state a claim of discrimination, harassment, segregation, or retaliation. Therefore, UVA requests that this Court grant its Motion and dismiss Plaintiff's Amended Complaint with prejudice.

---

[12] UVA intends to file a separate Rule 12(b)(1) Motion regarding this issue by October 9, 2026. However, in short, the Court lacks jurisdiction over this claim because UVA has sovereign immunity with respect to ADA claims under the Eleventh Amendment and state sovereign immunity principles. Federal courts in Virginia have dismissed ADA claims on these grounds. See Drew v. Virginia Commonwealth Univ., Parking & Transportation, No. 3:17-CV-429-JAG, 2018 WL 1508593, at *2 (E.D. Va. Mar. 27, 2018), aff'd sub nom. Drew v. Virginia Commonwealth Univ., 731 F. App'x 247 (4th Cir. 2018); Thomas v. Virginia Dep't of Transportation (Bristol Dist.), No. 1:22CV00036, 2023 WL 4355055, at *4 (W.D. Va. July 5, 2023).

Dated: October 5, 2026

Respectfully submitted,

By: /s/ *Steven D. Brown*

Steven D. Brown (VSB No. 42511)
Lindsey S. Komisin (VSB No. 84506)
Katherine L. Yourth (VSB No. 100261)
ISLER DARE P.C.
1111 East Main Street, Suite 1605
Richmond, Virginia 23219
Telephone: (804) 489-5500
Facsimile: (804) 234-8234
Email: sbrown@islerdare.com
Email: lkomisin@islerdare.com
Email: kyourth@islerdare.com

*Counsel for Defendant Rector*
*& Visitors of The University of Virginia*

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October 2026, a true and correct copy of the foregoing Reply Memorandum of Law in Support of its Motion to Dismiss has been filed with the Clerk of Court using the Court's CM/ECF filing system, which will then send notification of such filing (NEF) to the following:

Joshua Erlich, Esq.
ERLICH LAW OFFICE, PLLC
1550 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
Telephone: (703) 791-9087
Email: jerlich@erlichlawoffice.com

Thomas A. Newkirk, Esq. (Pro Hac Vice)
Myles D. Young, Esq. (Pro Hac Vice)
NEWKIRK ZWAGERMAN, P.L.C.
521 East Locust Street, Suite 300
Des Moines, Iowa 50309
Telephone: (515) 883-2000
Email: tnewkirk@newkirklaw.com
Email: myoung@newkirklaw.com

*Counsel for Plaintiff*

/s/ *Steven D. Brown*

*Counsel for Defendant Rector*
*& Visitors of The University of Virginia*